IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JUSTIN NALL**　　　　　　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**VS.**　　　　　　　　　　　　　　　**CIVIL ACTION NO.: 3:25-cv-00490-HTW-LGI**

**PHH MORTGAGE CORPORATION &**　　　　　　　　　　　　　　**DEFENDANTS**
**WESTERN PROGRESSIVE – MISSISSIPPI, INC.**

---

### MEMORANDUM OPINION AND TEMPORARY RESTRAINING ORDER

---

This matter came before the Court on the Plaintiff's *Ex Parte Motion for Temporary Restraining Order and Motion for Order to Show Cause as to Why a Preliminary Injunction Should not Issue Pending Trial* (Dkt 2). A hearing was held on July 10, 2025 at 1:30PM. Present at the hearing were the Plaintiff, Justin Nall, and counsel for the Plaintiff, Michael Ramsey. Defendants, PHH Mortgage Corporation (PHH) and Western Progressive – Mississippi, Inc. (Western Progressive) received electronic notice by Plaintiff of the hearing, but were absent for the proceedings. (See Dkt 6-1).

The Court has considered the Motion (Dkt 2), the accompanying Memorandum (Dkt 3), the testimony of the Plaintiff, and the argument of Plaintiff's Counsel and finds that the Motion is well taken and should be granted. In accordance with Rule 52[1] of the Federal Rules of Civil Procedure, the Court hereby enters the following Findings of Fact and Conclusions of Law:

---

[1] "In granting or refusing an interlocutory injunction, the court must ... state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2).

## **JURISDICTION**

District Courts are Courts of limited jurisdiction; therefore, the Court must consider whether it has subject matter jurisdiction as a preliminary matter. Plaintiff's Complaint asserts claims that arise under the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 *et seq.*[2] ("RESPA") (Dkt 1). Because this matter concerns a law of the United States of America, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331[3] which grants this Court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Furthermore, this Court has Supplemental Jurisdiction with respect to the Plaintiff's related state law claims pursuant to 28 U.S.C. §1367.[4] Plaintiff further asserts that the Court has Diversity Jurisdiction pursuant to 28 U.S.C. §1332,[5] however, because this Court finds that it has Federal

---

[2] Congress intended these statutory procedures to "effect certain changes in the settlement process for residential real estate that will result—(1) in more effective advance disclosure to home buyers and sellers of settlement costs; (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) in significant reform and modernization of local recordkeeping of land title information." 12 U.S.C. § 2601(b).

The Act involves "federally related mortgage loan[s]." § 2602(1). Congress authorized an "action pursuant to the provisions of section 2605, 2607, or 2608 of this title [to] be brought in the United States district court … for the district in which the property involved is located, or where the violation is alleged to have occurred," subject to limitations periods. § 2614.

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." § 1331.

[4] Subject to some exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a).

[5] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States …." § 1332(a).

Question Jurisdiction and Supplemental Jurisdiction, a finding related to Diversity Jurisdiction is not necessary.

## FINDINGS OF FACT

Plaintiff acquired a VA-guaranteed mortgage loan to finance the purchase of his home from the Bank of England. The Bank of England assigned the mortgage loan and its rights under the Deed of Trust to PHH.

After falling behind on his mortgage payments, the Plaintiff and PHH entered into a Loan Modification Agreement. The Plaintiff entered the Loan Modification Agreement into evidence as Plaintiff's Exhibit P-2. (Dkt 6-2).

The Loan Modification states that "[t]his agreement may not be supplemented, changed, modified or omitted except by written document executed by both me (referring to Plaintiff) and PHH Mortgage Services." (Dkt 6-2, p 6)

The Loan Modification Agreement was intended to bring the loan current as of the effective date and the Plaintiff was required to resume, on February 1, 2025, regular monthly payments of $2,462.43. (Dkt 6-2, p 4-5).

The Plaintiff, on February 11, 2025, made his first payment under the Loan Modification Agreement in the amount of $2,462.43. (Dkt 6-3). Plaintiff made his payment for March 2025 on March 7, 2025, in the amount of $2,462.43. (Dkt 6-4). After making his payments for February and March, Plaintiff was informed by PHH that his mortgage was past due and that if he made a payment in the amount of $2,462.43, the payment would not be applied to the loan.

Plaintiff and his attorney contacted PHH to advise PHH that the Loan Modification Agreement was binding; however, PHH informed the Plaintiff that it had apparently rescinded the modification without his written consent. Additional attempts failed to resolve this matter with

PHH. PHH then referred the matter to Western Progressive to commence a nonjudicial foreclosure on the Plaintiff's home at 127 Saint Charles Ave, Florence, MS 39073.

A foreclosure sale, to be valid under the Loan Modification Agreement, could be commenced only after the loan was 120 days delinquent. Because the Plaintiff made his March payment under the loan modification agreement, the loan was not more than 120 days delinquent when PHH initiated nonjudicial foreclosure on the Plaintiff's home. Said foreclosure presently is scheduled for July 16, 2025.

If the foreclosure is permitted to proceed, the Plaintiff will be dispossessed of his property rights in his home, and he may be subject to eviction. Further, the Plaintiff's Veterans Affairs benefits could be adversely affected by foreclosure because the loan was guaranteed by the United States Department of Veterans Affairs. If the foreclosure is halted by a Temporary Restraining Order ("TRO"), PHH will suffer little harm as it will still retain its lien on the Plaintiff's home.

This matter is primarily a dispute between the parties and the public interest will not be significantly affected by the granting of a TRO.

## CONCLUSIONS OF LAW

A TRO is appropriate if irreparable harm appears imminent and preservation of the status quo is needed until the court can conduct a hearing to consider a preliminary injunction. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters* 415 US 423, 438-439 (1974). Furthermore, a TRO may be issued to protect the plaintiff from irreparable injury "and to preserve the district court's power to render a meaningful decision after a [preliminary hearing and a] trial on the merits. The grant or denial of a [TRO] rests in the discretion of the district court." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (citing *Johnson v. Radford*, 449 F.2d 115 (5th Cir. 1971).

Before issuing the "extraordinary" relief of a TRO, the Court must consider four elements: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Turner v. Epps*, 460 F. App'x 322, 325 n.3 (5th Cir. 2012) (citing *Janvey v. Alguire,* 647 F.3d 585, 595 (5th Cir. 2011)). The plaintiff bears the burden to establish the appropriateness of a TRO, via the foregoing elements, "by preponderance of the evidence." *Nguyen v. Bank of Am.*, NA, No. 3:17-CV-199, 2017 WL 4478261, at *1 (S.D. Tex. June 22, 2017).

### Substantial Likelihood of Success on the Merits

The Fifth Circuit has stated the following standard with respect to the element of substantial likelihood of success on the merits:

> To show a likelihood of success on the merits for a [TRO], [Plaintiff] is not required to prove its entitlement to summary judgement, but must at least present a *prima facie* case showing entitlement to relief. Though there is no particular degree of likelihood of success that is required in every case, the party seeking a [TRO] must establish at least some likelihood of success on the merits. To determine the likelihood of success on the merits, courts look to the standards provided by the applicable substantive law.

*N. Miss. Med. Ctr., Inc. v. Quartiz Techs.*, No. 23-60483, 2025 U.S. App. LEXIS 1908, at *6 (5th Cir. Jan. 28, 2025) (internal citations omitted). Plaintiff's complaint asserts that PHH has violated RESPA due to its actions in commencing a nonjudicial foreclosure on the Plaintiff's home without the loan being more than 120 days in default, a requirement stated in 12 C.F.R. 1024.41(f). Indeed, the facts illustrate that the Plaintiff entered into a binding Loan Modification Agreement with PHH, which was executed by both parties. Pursuant to the Loan Modification Agreement, Plaintiff made payments due for February and March 2025. As such, PHH would not be able to claim that

Plaintiff defaulted until at least April 1, 2025—after which point the 120 day clock would begin to run. PHH, thus, commenced foreclosure proceedings before 120 days of delinquency had elapsed. Accordingly, the Plaintiff has established a substantial likelihood of success on the merits.

### **Irreparable Injury**

If the sale of Plaintiff's home proceeds, Plaintiff will permanently lose ownership of the property, his principal residence. The Fifth Circuit has held that "[t]he deprivation of an interest in real property constitutes irreparable harm." *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 297 (5th Cir. 2012) (Quoting *Third Church of Christ, Scientist, of N.Y.C. v. City of New York*, 617 F. Supp. 2d 201, 215 (S.D.N.Y. 2008), *aff'd*, 626 F.3d 667 (2d Cir. 2010)). *See also*, *Kilgore v. Wells Fargo Home Mortg.*, No. 1:12-CV-00899 AWI, 2012 WL 2195656, at *1 (E. D. Cal. June 13, 2012) (citing *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011)) ("With respect to irreparable injury, a plaintiff's loss of her residence is usually sufficient to satisfy this element."); *Wrobel v. S.L. Pope & Assocs.*, No. 07-CV-1591 IEG (BLM), 2007 WL 2345036, at *1 (S. D. Cal. Aug. 15, 2007) ("Losing one's home through foreclosure is an irreparable injury.")

If the foreclosure is allowed to proceed on July 16, 2025, the home may be sold to a third-party, or ownership of the property may transfer to PHH. In any event, the Plaintiff would be no longer entitled to possession of his home and his family will have to relocate without first obtaining the benefit of the equity contained in the home.

Furthermore, because the loan was guaranteed by the Department of Veterans Affairs, the foreclosure could have an adverse impact on the Plaintiff's federal benefits provide by the Department of Veterans Affairs. Accordingly, this Court finds that the Plaintiff has satisfied the first and second proof elements for obtaining a TRO.

### Harm from Granting of TRO

As noted above, the Plaintiff's harm would be substantial if the relief requested by the Plaintiff is denied. Conversely, if PHH is restrained from proceeding with the nonjudicial foreclosure as scheduled, it will not affect the lien or the rights of the Defendant. Accordingly, this Court finds that this absence of harm weighs in favor of granting a TRO.

### Public Interest

The final element of a Temporary Restraining Order is that the granting of such will not disserve the public interest. *N. Miss. Med. Ctr., Inc. v. Quartiz Techs*, 2025 U.S. App. LEXIS 1908, at *6 (5th Cir. 2025). Because this matter primarily concerns a dispute between the parties involved in this case, the Court can find no disservice to the public interest in halting the currently scheduled foreclosure of the Plaintiff's home. *See, i.e., Belknap v. Bank of Am., N.A.*, No. G-12-198, 2012 U.S. Dist. LEXIS 107503, at *9 (S.D. Tex. Aug. 1, 2012) ("Since the Plaintiffs and Defendants are the only parties who will be affected by the issuance of a preliminary inunction the public interest, if any, is a neutral factor.")

Furthermore, as noted above, if PHH is permitted to proceed with the nonjudicial foreclosure of the Plaintiff's home, it will do so in violation of federal law and regulation prohibiting such conduct. Further, the public has an unflagging interest to see that contracts are followed. *See, i.e. Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 571 (S.D. Tex. 2014) ("To the contrary, it is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law.").

Finally, the deprivation of Plaintiff's home will not only place an undue burden on the Plaintiff, but because the Department of Veterans Affairs has guaranteed the loan, the federal

government will bear a burden in reimbursing the loan after foreclosure. Given the circumstances, the Court finds that the final element of a TRO has been satisfied.

## CONCLUSION

The Plaintiff has carried his burden of persuasion (by a preponderance of the evidence) by meeting the elements for a TRO. It is therefore ordered that the Defendants, their employees, agents, and personas acting with them or on their behalf, are prohibited from transferring ownership of, further encumbering, or taking possession of the property located at 127 Saint Charles Ave. Florence, MS 39073.

This Court, if necessary, will schedule a hearing for a preliminary injunction, at which it would hear argument and evidence from all parties to the requested injunctive relief. Because Plaintiff obtained this TRO through an ex parte, one-sided argument and evidentiary hearing, this Court reserves its ability to reconsider, withdraw, or modify any of the findings of fact or conclusions of law herein, as necessary.

July 11, 2025

_____
The Honorable Henry T. Wingate
United States District Judge